Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Alyssa Brown (SBN 301313)
*abrown@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GABRIEL SILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>M.A.C.T. HEALTH BOARD, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. NEGLIGENCE<br>2. NEGLIGENCE PER SE<br>3. BREACH OF IMPLIED CONTRACT<br>4. BREACH OF FIDUCIARY DUTY<br>5. BREACH OF CONFIDENCE<br>6. VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §§ 17200, *et seq.*<br>7. VIOLATIONS OF THE CALIFORNIA CONFIDEDENTIALITY OF MEDICAL INFORMATION ACT, CA. CIV. CODE §§ 56, *et seq.*<br>8. VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT, CAL. CIV. CODE §§ 1798.80, *et seq.*<br>9. INVASION OF PRIVACY<br>10. UNJUST ENRICHMENT<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Gabriel Silva ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Action against Defendant M.A.C.T. Health Board, Inc. ("MACT" or "Defendant") for its failure to properly safeguard their protected health information and personally identifiable information stored within Defendant's information network. Plaintiff's allegations are based on personal knowledge, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

## I.    **INTRODUCTION**

1.    This class action arises out of the recent data breach (the "Data Breach") involving MACT, which collected and stored certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of Plaintiff and Class Members.

2.    MACT is a tax-exempt "consortium of federally recognized and non-federally recognized tribes" which operates as a healthcare provider in the central Sierra Nevada foothills. MACT offers numerous healthcare-related services, including family medical, dental, chiropractic, behavioral health, and optometry services.[1]

3.    MACT stores significant sensitive PII and PHI. MACT owes a duty to the individuals whose data MACT obtains and maintains. This duty arises because it is foreseeable that the exposure of PII or PHI to unauthorized persons, especially to perpetrators of cyberattacks with nefarious intentions, will result in harm to the affected individuals, including, but not limited to: the invasion of their private data, the sale of their PII/PHI to facilitate identity theft, exposure to scams or phishing frauds, loss of time, economic damages as affected individuals scramble to protect their identities, and/or the countless ways these individuals' peace of mind is destroyed knowing their information is no longer secured.

4.    Given the dire consequences of compromised PII/PHI, individuals expect their data to be securely protected. Unfortunately, this trust is misplaced and violated when entities, like Defendant, subject themselves to the risk of cyberattacks.

5.    The U.S. Department of Health and Human Services (HHS) has warned organizations who hold PHI of the threat posed by ongoing ransomware attacks. The U.S. Cybersecurity and

---

[1] *Who We Are*, MACT HEALTH, https://www.macthealth.org/about-us (last visited Feb. 4, 2026).

CLASS ACTION COMPLAINT

Infrastructure Agency, the Federal Bureau of Investigation (FBI), and the HHS issued a joint alert on a specific cybercrime group targeting organizations that held PHI.[2]

6.    Despite being on notice that it was storing sensitive Private Information that is valuable and vulnerable to cyber attackers, MACT failed to take basic security precautions that could have protected Plaintiff's and Class Members' sensitive data.

7.    In November of 2025, MACT "experienced an incident that disrupted the operations of [its] IT systems."[3] After further investigation, MACT determined that the disruption was caused by an "unauthorized party [who] accessed some of the files on MACT's systems" over the course of eight days, between November 12 and November 20 of 2025.[4] A notorious ransomware group, Rhysida, later took credit for the attack.[5]

8.    On January 23, 2024, two months after the Breach, Defendant began mailing its "Notice of Data Privacy Incident" to affected individuals.[6] In its Notice, Defendant acknowledged that "an unauthorized party accessed some of the files on MACT's systems between November 12, 2025 and November 20, 2025."[7]

9.    For eight days, perpetrators were able to access MACT's database, and obtained access to the types of information that federal and state law require companies take security measures to protect, including, but not limited to: names and Social Security numbers ("SSNs"), as well as PHI in the form of patients' doctors, diagnoses, insurance information, medicines, test results, images, care and treatment.[8]

---

[2] Arghire, I., Maor, E., Ferguson, R., Wilson, M., Eston, T., Au, D., Townsend, K., & Kovacs, E. (2022, October 24). *US Healthcare Organizations Warned of 'Daixin Team' Ransomware Attacks*. SECURITYWEEK, https://www.securityweek.com/us-healthcare-organizations-warned-daixin-team-ransomware-attacks/ (last accessed Sept. 6, 2024).

[3] *Notice of Data Privacy Incident*, MACT HEALTH, https://static1.squarespace.com/static/681a3d1730e6d15b8dab6cc2/t/6973b0056b0e6e23ca6ebfd4/1769189381629/MACT_Notice_of_Data_Privacy_Incident.pdf (last accessed Feb. 5, 2026).

[4] *Id.*

[5] Paul Bischoff, *California Tribal Clinics Warn Patients of Data Breach*, COMPARITECH (Jan. 30, 2026), https://www.comparitech.com/news/california-tribal-clinics-warn-patients-of-data-breach-that-leaked-ssns-and-medical-info/.

[6] *Notice of Data Privacy Incident*, *supra* note 4.

[7] *Id.*

[8] *Id.*

CLASS ACTION COMPLAINT

10.     Plaintiff and Class Members have been victimized by the Data Breach and remain at a continuing and imminent threat of harm, as any combination of this PII/PHI will forever subject them to being targets of fraud, identity theft, misuse, and other wrongdoings. SSNs are not easily changed.

11.     The Data Breach was a direct result of MACT's failure to implement  adequate and reasonable cybersecurity procedures and protocols necessary to protect Private Information. Specifically, MACT disregarded the rights of Plaintiff and Class Members by (a) failing to take adequate and reasonable measures to ensure the security of its databases and IT systems; (b) concealing or otherwise omitting the material fact that it did not have systems in place to safeguard Private Information; (c) failing to take available steps to detect and prevent the Data Breach; (d) failing to monitor its databases and IT systems, and to timely detect the Data Breach; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

12.     Due to MACT's inadequate security practices, negligence, and other data security shortcomings, affected Class Members face a constant threat of repeated harm. Further, Class Members face threats of crimes such as fraudulent opening of new financial accounts in Class Members' names, taking out fraudulent loans, using Class Members' information to obtain government benefits, filing fraudulent tax returns, and filing false medical claims.

13.     Plaintiff and Class Members retain a significant interest in ensuring that their Private Information, which remains in MACT's possession, is protected from further breaches, and seek to remedy the harms suffered as a result of the Data Breach.

14.     Plaintiff, individually and on behalf of similarly situated persons, seeks to recover damages, equitable relief, including injunctive relief designed to prevent a reoccurrence of the Data Breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies deemed proper.

## II.     PARTIES

**Plaintiff Gabriel Silva**

15.     Plaintiff Gabriel Silva is, and at all relevant times was, a citizen of California, residing in Murphys, California. Believing MACT would implement and maintain reasonable security and

practices to protect patients' personal information, Plaintiff Silva provided MACT with his PII/PHI including his name, SSN, residential address, and medical history. He also provided MACT with his family's PII/PHI,

16.     Plaintiff Silva and his family began using MACT's healthcare services in 2021. Because Plaintiff and his family live in a rural area of California, MACT is one of the only healthcare provider options available to them. Plaintiff and his family receive healthcare services exclusively through MACT.

17.     When the Data Breach occurred, numerous MACT systems went offline, causing stress, anxiety, inconvenience, and out-of-pocket costs for Plaintiff Silva. Plaintiff Silva's daughter was in need of a new pair of eyeglasses, which could have been obtained from MACT free of charge but for the Data Breach which caused MACT's service disruption. As a result of the Data Breach, Plaintiff Silva was forced to obtain eyeglasses for his daughter from a different company at a higher charge.

18.     Moreover, MACT's service disruption, caused by the Data Breach, forced Plaintiff Silva and his wife to expend time and effort attempting to make alternative plans for their large family's required medical needs. These challenges were exacerbated by the fact that MACT is one of very few healthcare providers in Plaintiff's area.

19.     Plaintiff Silva and his wife have spent several hours monitoring their accounts as a result of the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Silva otherwise would have spent on other activities, such as work and/or recreation with his family. Plaintiff Silva plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his accounts for any unauthorized activity.

20.     Plaintiff Silva reasonably expected that MACT would safeguard his PII/PHI, as well as that of his family. Plaintiff Silva would not have trusted MACT with his and his family's PII/PHI if he knew that the information collected by MACT would be at risk. Plaintiff Silva and his family have suffered irreparable damage and have been placed at a heightened risk of fraud or identity theft as a result of the Data Breach.

CLASS ACTION COMPLAINT

**Defendant MACT**

21.    M.A.C.T. Health Board, Inc. is a healthcare provider operating numerous clinics in the central Sierra Nevada foothills.[9]

22.    MACT is a tax-exempt nonprofit corporation organized in the state of California, with its principal place of business located at 52 S. Main Street, Angels Camp, California 96222.

### III.    JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum of value of five million dollars ($5,000,000), there are in excess of 100 Class Members, the action is a class action in which one of more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

24.    This Court has personal jurisdiction over Defendant because Defendant has maintains its principal place of business in Angels Camp, California, is organized in California, operates in California, and conducts significant business in California.

25.    Venue properly lies in this judicial district because, inter alia, MACT maintains its principal place of business in this District; transacts substantial business, has agents in, and is otherwise located in this District; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial District.

### IV.    FACTUAL ALLEGATIONS

### A.    Data Breaches and the Market for PII/PHI

26.    Data breaches in the United States have become ubiquitous, with the goal of criminals being to monetize the stolen data.[10]

---

[9] Who We Are, MACT HEALTH, https://www.macthealth.org/about-us (last visited Feb. 4, 2026).
[10] Statista Research Department, *Number of Data Records Exposed Worldwide From 1st Quarter 2020 to 3rd Quarter 2025*, STATISTA, https://www.statista.com/statistics/1307426/number-of-data-breaches-worldwide/ (last accessed Sept. 6, 2024).

CLASS ACTION COMPLAINT

27.    When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[11]

28.    The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29 percent spent a month or more resolving problems" and that resolution of those problems could take more than a year.[12]

29.    The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[13] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[14]

30.    When companies entrusted with consumer data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harms irreparable.

31.    PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000-$1,200 on the dark web[15][16] and the legitimate data brokerage industry is valued at more than $250 billion.[17]

---

[11] Identity Theft Resource Center, 2017 Annual Data Breach Year-End Review, https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_ V2_combinedWEB.pdf (last accessed May 21, 2024).

[12] U.S. Department of Justice, Bureau of Justice Statistics, Victims of Identity Theft, 2014 (Sept. 2015), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last accessed May 21, 2024).

[13] U.S. Government Accountability Office Report to Congressional Requesters, Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services, https://www.gao.gov/assets/700/697985.pdf (last accessed Sept. 6, 2024).

[14] *Id.*

[15] Ryan Smith, *Revealed-how much is personal data worth on the dark web?*, INSURANCE BUSINESS MAGAZINE (May 1, 2023), https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx (last accessed Sept. 6, 2024).

[16] Maria LaMagna, *The sad truth about how much your Google data is worth on the dark web*, MARKETWATCH, https://www.marketwatch.com/story/spooked-by-the-facebook-privacy-violations-this-is-how-much-your-personal-data-is-worth-on-the-dark-web-2018-03-20 (last accessed Sept. 6, 2024); Emily Wilson, *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019), https://thenextweb.com/news/children-data-sold-the-dark-web (last accessed Sept. 6, 2024).

[17] Geoff Williams, *Data Brokers: How Personal Data Becomes Business*, CNET (Oct. 8, 2025), https://www.cnet.com/tech/services-and-software/data-brokers-how-your-personal-data-becomes-business/.

32.    Medical data is particularly valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendant, are targeted by cyber-criminals.[18]

33.    A 2021 report by Invisibly, a team of application developers focused on reclaiming users' data, found that personal medical information is one of the most valuable pieces of information within the market for data. The report noted that "[i]t's worth acknowledging that because health care records often feature a more complete collection of the PII User's identity, background, and personal identifying information (PII), health care records have proven to be of particular value for data thieves." While a single SSN might go for $0.53, a complete health care record sells for $250 on average.[19]

| Record Type | Average Price |
|---|---|
| Health Care Record | $250.15 |
| Payment Card Details | $5.40 |
| Banking Records | $4.12 |
| Access Credentials | $0.95 |
| Social Security Number | $0.53 |
| Credit Record | $0.31 |
| Basic PII | $0.03 |

34.    Medical records are even worth more than an SSN, credit card, and driver's license combined, according to federal officials. They estimate that medical records can go for anywhere between $250 to $1,000.[20]

---

[18] Caroline Humer & Jim Finkle, *Your medical record is worth more to hackers than your credit card*, REUTERS (Sept. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924 (last accessed Sept. 6, 2024).
[19] *How Much is Your Data Worth? The Complete Breakdown for 2024*, INVISIBLY (Jul. 13, 2021) https://www.invisibly.com/learn-blog/how-much-is-data-worth/ (last accessed Sept. 6, 2024).
[20] Wilkinson, Kate, *RI hospitals fight cyberattacks on 'almost a daily basis'*, WPRI (Oct. 10, 2023), https://www.wpri.com/target-12/ri-hospitals-fight-cyberattacks-on-almost-a-daily-basis/ (last accessed Sept. 6, 2024).

CLASS ACTION COMPLAINT

35.    In this black market, criminals seek to sell stolen data to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts, and otherwise engage in illegal financial transactions under the victims' names.

36.    PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, a growing market is for children's data.[21]

37.    Medical information in particular is extremely valuable to identity thieves, and thus, the medical industry has also experienced disproportionally higher numbers of data theft events than other industries. According to a report by the Health Insurance Portability and Accountability Act Journal, "healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past nine (9) years, with 2018 seeing more data breaches reported than any other year since records first started being published."[22]

38.    A study done by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that most victims of medical identity theft were forced to pay out of pocket costs for healthcare they did not receive to restore coverage.[23] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

---

[21] *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019) https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark-web/ (last accessed Sept. 6, 2024).

[22] *Healthcare Data Breach Statistics*, HIPPA JOURNAL, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last accessed May 21, 2024).

[23] See Elinor Mills, Study: *Medical Identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last accessed Sept. 6, 2024).

CLASS ACTION COMPLAINT

**B.** __The Sensitivity of Customers' Private Information Demands Heightened Protection__

39.     Entities in the healthcare industry are popular targets for cyberattacks and require top-tier security measures to protect PII/PHI, especially given that these databases store sensitive patient records.

40.     Ponemon Institute, an expert in the annual state of cybersecurity, indicated in 2020 that organizations storing PHI were top targets for cyber-attacks. In fact, Defendant has been on notice for years that PHI is a prime target for scammers due to the amount and value of confidential patient information maintained. In 2019 alone, numerous entities in the healthcare sector suffered high-profile data breaches, including Quest Diagnostics and LabCorp. Defendant had resources for years to address its data security: MACT currently commands approximately $44 million in annual revenue.[24]

41.     In a survey released by Ponemon Institute in January 2023, nearly half of respondents (47 percent) said their organizations experienced a ransomware attack in the past two years, up from 43% in 2021. And 45 percent of respondents reported complications from medical procedures due to ransomware attacks, up from 36 percent in 2021.[25]

42.     Countless victims impacted by the Data Breach now face a constant threat of being repeatedly harmed, including but not limited to living the rest of their lives knowing that criminals can compile, build, and amass profiles on them for decades – exposing them to a continuing threat of identity theft, disclosure of PII/PHI, threats, extortion, harassment and phishing scams, and the attendant anxiety from not knowing how one's information will be used when it comes into nefarious individuals' hands.

43.     Additionally, data breaches of this caliber can result in the exposure of extremely sensitive information about children's private medical histories, medical conditions, psychological assessments, psychiatric evaluations, location of schools and residences, and much more, which

---

[24] *MACT Health Board Incorporated*, PROPUBLICA,
https://projects.propublica.org/nonprofits/organizations/941668995 (last accessed Feb. 5, 2026).
[25] Southwick, Ron. *California medical group discloses ransomware attack, more than 3 million affected*, CHIEF HEALTHCARE EXECUTIVE (Feb. 10, 2023),
 https://www.chiefhealthcareexecutive.com/view/california-medical-group-discloses-ransomware-attack-more-than-3-million-affected (last accessed Sept. 6, 2024).

CLASS ACTION COMPLAINT

poses great dangers on its own. The FBI has warned that "widespread collection of student data could have privacy and safety implications if compromised or exploited."[26] According to the FBI, malicious use of sensitive student data "could result in social engineering, bullying, tracking, identity theft, or other means for targeting children."[27] On top of privacy and safety implications, children must also live their entire lives knowing private, sensitive information about their medical histories or conviction records is subject to public exposure at any time.

44.    Due to the special risks associated with individuals' data breaches and the increasing frequency with which they are occurring, it is imperative for entities like Defendant to routinely: (a) monitor for system breaches, cyberattacks and other exploitations; and (b) update their software, security procedures, and firewalls.

## C. Defendant's Duty to Safeguard PII/PHI

45.    Defendant collects, receives, and accesses consumers' extensive individually identifiable information. These records include names, SSNs, as well as PHI in the form of health insurance information and general health information.

46.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[28]

47.    The FTC has issued numerous guides for entities engaged in commerce highlighting the importance of reasonable data security practices.

48.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[29] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of

---

[26] Education Technologies: *Data Collection and Unsecured Systems Could Pose Risks to Children*, FBI Alert No. I-091318-PSA (Sept. 13, 2018), https://www.ic3.gov/media/2018/180913.aspx (last accessed Sept. 6, 2024).
[27] *Id.*
[28] Federal Trade Commission, *Start With Security*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Sept. 6, 2024).
[29] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Sept. 6, 2024).

CLASS ACTION COMPLAINT

personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

49.    The FTC further recommends that entities not maintain PII/PHI longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[30]

50.    The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

51.    Plaintiff and Class Members provided their PII/PHI to MACT with the reasonable expectation and mutual understanding that MACT and any of its affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

52.    Data security is purportedly a critical component of MACT's business model. In its "Notice of Privacy Practices" MACT makes the following statements[31]:

- We understand that information about you and your health is personal. We are committed to protecting information about you.

- We create a record of the care and services you receive. We need this record to provide you with quality care and to comply with certain legal requirements. This notice applies to all of the records of your care generated by us, whether made by our personnel or your provider.

- We are required by law to:
    - Make sure that information that identifies you is kept private (with certain exceptions)

---

[30] Federal Trade Commission, *Start With Security*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Sept. 6, 2024).

[31] *Notice of Privacy Practies*, MACT HEALTH, https://www.macthealth.org/privacy (last visited Feb. 5, 2026).

CLASS ACTION COMPLAINT

- ▪ Give you this notice of our legal duties and privacy practices with respect to information about you

- ▪ Follow the terms of the notice that is currently in effect

- [W]e will notify you as required by law following a breach of your unsecured protected health information.

53.     MACT's failure to provide adequate security measures to safeguard patients' PII/PHI is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to patients' highly confidential PII/PHI.

54.     Since the Data Breach, Class Members face a constant threat of continued harm. Now that their sensitive personal and medical information – their names, SSNs, health insurance information and general health information – is in possession of cybercriminals, Class Members must worry about being victimized throughout the rest of their lives. Furthermore, data breaches affecting minors' Private Information compromises children's whereabouts and routines, subjecting them to the danger of potential attacks, embarrassment, or even kidnapping.

55.     Plaintiff and other similarly situated individuals trusted MACT with sensitive and valuable PII/PHI. Had MACT disclosed to Plaintiff and Class Members that its data systems were not secure and were vulnerable, Plaintiff would not have trusted MACT with such sensitive information. In fact, MACT would have been forced to adopt reasonable data security measures and to comply with state and federal law.

56.     MACT knew or should have known that Plaintiff and Class Members would reasonably rely upon, and trust MACT's express and implied promises regarding the security and safety of its data and systems.

57.     By collecting victims' sensitive PII/PHI and failing to protect it by maintaining inadequate security systems, failing to properly archive the PII/PHI, allowing access of third parties, and failing to implement security measures, MACT caused harm to Plaintiff and all affected individuals.

**D.  <u>MACT's Failure to Protect Against the Data Breach and its Impact on the Class</u>**

58.     At all material times, MACT failed to maintain proper security measures despite its promises of safety and security to patients.

59.    In November of 2025, MACT faced a cyberattack which placed the private data of affected individuals in the hands of criminals for at least 8 days (November 12-20, 2025). MACT first detected unusual activity on or around November 25, 2025, when it experienced disruptions on its network servers.[32]

60.    The Data Breach caused widespread disruptions to MACT's systems and clinics



starting on November 20, 2025, including MACT's phone services, prescription orders, and appointment scheduling. Though most services were restored by December 1, 2025, MACT's specialized imaging services remained unavailable as of January 22, 2026.[33]

61.    The notorious ransomware group Rhysida since claimed responsibility for the attack, and posted a ransom demand of eight bitcoin (approximately $662,000) and, to prove the veracity of its claims, Rhysida posted images of the documents it claims to have stolen[34]:

62.    MACT did not issue a notice to affected individuals until January 23, 2026, two months after the Data Breach occurred and it became aware that individuals' data had been accessed

---

[32] *Notice of Data Privacy Incident*, MACT HEALTH, https://static1.squarespace.com/static/681a3d1730e6d15b8dab6cc2/t/6973b0056b0e6e23ca6ebfd4/1769189381629/MACT_Notice_of_Data_Privacy_Incident.pdf (last accessed Feb. 5, 2026).
[33] Paul Bischoff, *California Tribal Clinics Warn Patients of Data Breach That Leaked SSNs and Medical Info*, COMPARITECH (Jan. 30, 2026), https://www.comparitech.com/news/california-tribal-clinics-warn-patients-of-data-breach-that-leaked-ssns-and-medical-info/.
[34] *Id.*

and exfiltrated.[35] Moreover, in its Notice of Data Breach Incident posted to its website, MACT fails to state that the Breach occurred as a result of a cyberattack.[36]

63.    MACT knew that PII/PHI was valuable on the dark web and therefore knew that MACT was a potential target for cybercrime. Despite MACT's knowledge of the sensitivity of its stored data, MACT failed to implement proper security measures to secure and protect the PII/PHI of its patients. As a result of MACT's negligent, and/or wanton disregard in, protection of patients' PII/PHI, affected individuals now must live the rest of their lives knowing that criminals are able to compile, build, and amass their profiles for decades to come, exposing them to a never-ending threat of targeted extortion, identity theft, and harassment.

64.    Plaintiff and Class Members have suffered actual harm as a result of MACT's conduct. MACT failed to institute adequate security measures and neglected system vulnerabilities that led to the Data Breach. This Breach allowed hackers to access the PII/PHI of Plaintiff and Class Members.

65.    As explained above, exposure of this information to the wrong people can have serious consequences. The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that identity theft can impact an individual's ability to get credit cards and obtain loans, such as student loans or mortgages.[37] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

66.    The U.S. GAO found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[38]

---

[35] Steve Adler, *MACT Health Board Patients Affected by November 2025 Ransomware Attack*, THE HIPAA J. (Jan. 26, 2026), https://www.hipaajournal.com/mact-health-board-data-breach/.
[36] *Notice of Data Privacy Incident*, MACT HEALTH, https://static1.squarespace.com/static/681a3d1730e6d15b8dab6cc2/t/6973b0056b0e6e23ca6ebfd4/1769189381629/MACT_Notice_of_Data_Privacy_Incident.pdf (last accessed Feb. 5, 2026).
[37] *Identity Theft: The Aftermath 2017*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last accessed Sept. 6, 2024).
[38] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Sept. 6, 2024).

67.    There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[39]

68.    As a direct and proximate result of MACT's breach of confidence and failure to protect the PII/PHI of individuals, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this PII/PHI, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen PII/PHI, illegal sales of the compromised PII/PHI on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores, lost work time, and other injuries. MACT, through its misconduct, has enabled numerous bad actors to sell and profit from PII/PHI that belongs to Plaintiff and Class Members.

69.    But for MACT's unlawful conduct, scammers would not have access to Plaintiff's and Class Members' PII/PHI. MACT's unlawful conduct has directly and proximately resulted in a widespread threat of digital attacks against Plaintiff and Class Members.

70.    This Data Breach creates a heightened security concern for the affected individuals, including Plaintiff and Class Members, because their PII/PHI and health-related information, including unique medical records and other sensitive health information is disclosed. Medical privacy is among the most important tenets of American healthcare. Patients must be able to trust their physicians, insurers, and pharmacies to protect their medical information from improper disclosure including, but not limited to, their health conditions and courses of treatment. Indeed,

---

[39] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Sept. 6, 2024).

numerous state and federal laws require this. And these laws are especially important when protecting individuals with highly sensitive or private medical conditions disclosure of which can and do subject them to regular discrimination or ridicule.

71.    Plaintiff and Class Members face ongoing, imminent threats of similar fraud claims and scams, resulting in ongoing monetary loss and economic harm; mitigation expenses and time spent on credit monitoring, credit freezes/unfreezes; expenses and time spent in initiating fraud alerts; contacting third parties; decreased credit scores; lost work time; and other injuries.

72.    As a result of the Data Breach, Plaintiff and Class Members also suffered inconvenience and out-of-pocket expenses due to the resulting outages to several of MACT's systems. In addition, Plaintiff and Class Members have spent significant time and effort researching the Breach, monitoring their accounts for fraudulent activity, reviewing unsolicited emails and texts, and answering telephone calls.

73.    Breach victims have spent significant time monitoring personal accounts (banking, credit monitoring, financial applications, and even other applications/accounts that may be attacked) for fraudulent activity. Many breach victims have had to change their passwords and associated accounts which may be connected to various pieces of stolen PII/PHI. Plaintiff and Class Members have been monitoring their credit activity, living in constant fear and apprehension of further attacks.

74.    Plaintiff and other Class Members also have spent significant time researching and comparing various identity protection services, such as Equifax and Experian. Had Plaintiff and Class Members been able to trust that MACT would vigilantly protect their data, they would not have to take drastic action, and invest significant time and energy, to protect their PII/PHI themselves.

75.    Phishing and other targeted attacks result from data breaches that disclose Private Information. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security

numbers. Phishing scams are frequently successful, and the FBI reported that Americans lost approximately $57 million to such scams in 2019 alone.[40]

76. Such scams trick individuals into giving account information, passwords, and other valuable personal information to scammers. This significantly increases the risk of further substantial damage to Plaintiff and Class Members, including, but not limited to, monetary and identity theft. Due to the Breach, Plaintiff and Class Members now need to spend a substantial amount of time and effort discerning genuine emails from emails trying to phish their PII/PHI.

77. Given the highly sensitive nature of the information stolen, and its dissemination to unauthorized parties, Plaintiff has already suffered injury and remains at a substantial and imminent risk of future harm.

78. Plaintiff and Class Members are now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates additional out-of-pocket expenses to pay for these services.

79. In sum, Plaintiff and similarly situated patients have been injured as follows due to the Data Breach:

    a. Theft of their PII/PHI and the resulting loss of privacy rights in that information;

    b. Improper disclosure of their PII/PHI;

    c. Loss of value of their PII/PHI;

    d. The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

    e. MACT's retention of profits attributable to Plaintiff's and other Class Members' PII/PHI that MACT failed to adequately protect;

    f. Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff and Class Members are now exposed to;

---

[40] *How to Recognize and Avoid Phishing Scams*, FTC CONSUMER ADVICE, https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last accessed Feb. 2, 2024).

g.  Inconvenience, stress, and anxiety due to the extended downtime of several of MACT's systems, which was caused by the Data Breach;

h.  Ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this Data Breach; and

i.  Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this Data Breach.

## V.    **CLASS ALLEGATIONS**

80.    Plaintiff brings this action  on behalf of himself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All individuals who are residents of the United States whose PII and/or PHI were compromised in the Data Breach, including all persons who received notice of the Data Breach.

81.    Excluded from the Settlement Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) MACT and its subsidiaries, parent companies, successors, predecessors, and any entity in which MACT or its parents, have a controlling interest, and its current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons. The class may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

82.    **Numerosity**. The class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of Defendant's current and former patients whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's books and records.

83.    **Commonality and Predominance**. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform breach of MACT's duty and reliance on MACT's ability to protect Class Members' data. The questions of law and fact common to the Class predominate

CLASS ACTION COMPLAINT

over questions which may affect Plaintiff and individual Class Members. Common questions of law and fact include, but are not limited to, the following:

    a. Whether MACT's conduct is an unlawful business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

    b. Whether MACT's conduct is an unfair business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

    c. Whether MACT's conduct is in violation of California Civil Code §§ 1798, *et seq.*;

    d. Whether MACT's conduct is in violation of California Civil Code §§ 56, *et seq.*;

    e. Whether MACT's failure to implement effective security measures to protect Plaintiff's and Class Members' PII/PHI was negligent;

    f. Whether MACT represented to Plaintiff and the Class that it would protect Plaintiff's and Class Members' PII/PHI;

    g. Whether MACT owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

    h. Whether MACT breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

    i. Whether Class Members' PII/PHI was accessed, compromised, or stolen in the Breach;

    j. Whether MACT's conduct caused or resulted in damages to Plaintiff and Class Members;

    k. Whether MACT failed to notify the public of the Breach in a timely and adequate manner;

    l. Whether MACT knew or should have known that its systems were vulnerable to a data breach;

    m. Whether MACT adequately addressed the vulnerabilities that allowed for the Data Breach; and

n.  Whether, as a result of MACT's conduct, Plaintiff and the Class are entitled to injunctive relief.

84.  **Typicality**. Plaintiff's claims are typical of the claims of Class Members. Plaintiff's and Class Members' claims are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and Class Members each had their PII and PHI exposed and/or accessed by an unauthorized third party.

85.  **Adequacy**. Plaintiff is an adequate representative of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and has no interests antagonistic to the interests of the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical, as explained above.

86.  **Superiority**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

87.  The litigation and resolution of Class Members' claims are manageable. Individual litigation of the legal and factual issues raised by MACT's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

88.  Plaintiff and Class Members have suffered injury in fact as a result of MACT's false, deceptive, and misleading representations. Plaintiff would not have sought services from, provided PII/PHI to, or otherwise have their PII/PHI provided to MACT but for the reasonable belief that MACT would safeguard Plaintiff's PII/PHI.

89.  The class is identifiable and readily ascertainable. Notice can be provided to such affected individuals using techniques and a form of notice similar to those customarily used in class

actions, and by internet publication, radio, newspapers, and magazines. Further, MACT already has identified and sent a letter to affected Class Members.

90.     MACT has acted on grounds generally applicable to the entire class, thereby making final and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for MACT.

91.     Absent a class action, MACT will likely retain the benefits of its wrongdoing. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by MACT's conduct. It would be virtually impossible for Class Members individually to redress effectively the wrongs done to them by MACT. Even if Class Members could afford such individual litigation, the court system could not. Absent a representative action, the Class Members will continue to suffer losses and MACT (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

92.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

93.     MACT owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that individuals' PII/PHI was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

94.     MACT also had a duty to destroy Plaintiff's and Class Members' PII/PHI within an appropriate amount of time after it was no longer required by MACT, in order to mitigate the risk of the stale PII/PHI being compromised in a data breach.

95.    MACT's duties to use reasonable care arose from several sources, including those described below. MACT had a common law duty to prevent foreseeable harm to others, including Plaintiff and Class Members, who were the foreseeable and probable victims of any inadequate security practices.

96.    MACT had a special relationship with Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. MACT was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach. Plaintiff and Class Members were compelled to entrust MACT with their PII/PHI. At relevant times, Plaintiff and Class Members understood that MACT would take adequate security precautions to safeguard that information. Only MACT had the ability to protect Plaintiff's and Class Members' PII/PHI stored on MACT's servers.

97.    MACT knew or should have known that Plaintiff's and the Class Members' PII/PHI is information that is frequently sought after by hackers.

98.    MACT knew or should have known that Plaintiff and the Class Members would suffer harm if their PII/PHI was leaked.

99.    MACT knew or should have known that its security systems were not adequate to protect Plaintiff's and the Class Members' PII/PHI from a data breach, especially in light of the increase in data breaches in the healthcare sector.

100.   MACT knew or should have known that adequate and prompt notice of the Data Breach was required such that Plaintiff and the Class could have taken more swift and effective action to change or otherwise protect their PII/PHI, rather than waiting until two months after the Breach to notify affected individuals. MACT failed to provide timely notice upon discovery of the Data Breach.

101.   MACT's conduct as described above constituted an unlawful breach of its duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class Members' PII/PHI by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, MACT did not implement, design, or maintain adequate measures to detect

a data breach when it occurred or adopt sufficient measures to notify affected parties in the event of a data breach.

102.   MACT's conduct as described above constituted an unlawful breach of its duty to provide adequate and prompt notice of the Data Breach.

103.   MACT entered a special relationship when Plaintiff and Class Members entrusted MACT to protect their PII/PHI. Plaintiff and the Class trusted MACT and, in doing so, provided MACT with their PII/PHI, based upon MACT's representations that it would implement adequate systems to secure their information.

104.   MACT breached its duty in this relationship to implement and maintain reasonable measures to protect Plaintiff's and Class Members' PII/PHI.

105.   Plaintiff's and Class Members' PII would have remained private and secure had it not been for MACT's wrongful and negligent breach of their duties. The leak of Plaintiff's and Class Members' PII/PHI, and all subsequent damages, was a direct and proximate result of MACT's negligence.

106.   MACT's negligence was, at least, a substantial factor in causing Plaintiff's and Class Members' PII/PHI to be improperly accessed, disclosed, and otherwise compromised, and in causing the Class Members' other injuries because of the Data Breach.

107.   The damages suffered by Plaintiff and Class Members were the direct and reasonably foreseeable result of MACT's negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and Class Members' PII/PHI. MACT knew or should have known that its security for safeguarding Plaintiff's and Class Members' PII/PHI was vulnerable to a data breach.

108.   MACT's negligence directly caused significant harm to Plaintiff and the Class. Specifically, Plaintiff and the Class are now vulnerable to numerous attacks, including various phishing scams and identity theft.

109.   MACT had a fiduciary duty to protect the confidentiality of its communications with Plaintiff and Class Members by virtue of the explicit privacy representations MACT made to Plaintiff and Class Members when it sought, collected, created, and stored their PII/PHI.

110.   MACT had information relating to Plaintiff and Class Members that it knew or should have known to be confidential.

111.   Plaintiff's and Class Members' communications with MACT about sensitive PII/PHI information and their status as patients were not matters of general knowledge.

112.   MACT breached its fiduciary duty of confidentiality by designing its data protection systems in a way to allow for a data breach of massive caliber.

113.   At no time did Plaintiff or Class Members give consent to MACT's conduct.

114.   As a direct and proximate cause of MACT's actions, Plaintiff and the Class suffered damage in that the information they intended to remain private is no longer so and their PII/PHI was disclosed without their knowledge or consent.

## COUNT II
## NEGLIGENCE PER SE

115.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

116.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as MACT or failing to use reasonable measures to protect PII/PHI. Various FTC publications and orders also form the basis of MACT's duty.

117.   MACT violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with the industry standards. MACT's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach that disclosed Plaintiff and the Class's PII and PHI to unauthorized third parties.

118.   MACT violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect personal information and not complying with industry standards. MACT's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach that disclosed patients' PII/PHI to unauthorized third parties.

119.   MACT's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se. This negligence was, at least, a substantial factor in causing Class Members' PII/PHI to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries as a result of the Data Breach.

120.   Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect as they are natural persons. In addition, the harm that Class Members have suffered is the type of harm that the FTC Act (and similar state statutes) were intended to prevent. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same or similar harm suffered by Class Members.

121.   MACT also violated other laws in allowing and as a result of the Data Breach, including HIPAA, the California Unfair Competition Law, the California Customer Records Act, and the California Confidentiality of Medical Information Act.

122.   As a direct and proximate result of Defendant's violation of law and its negligence, Plaintiff and Class Members have been injured, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED CONTRACT

123.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

124.   In connection with receiving healthcare treatment and services, Plaintiff and Class Members entered implied contracts with MACT.

125.   Pursuant to these implied contracts, Plaintiff and Class Members paid money to Defendant, whether directly or through their insurers, and provided Defendant with their PII/PHI. In exchange, Defendant agreed to, among other things, and Plaintiff understood that Defendant would: (1) provide medical treatment, services, or health plan benefits to Plaintiff and Class Members; (2) take reasonable measures to protect the security and confidentiality of

Plaintiff's and Class Members' PII/PHI; and (3) protect Plaintiff's and Class Members' PII/PHI in compliance with federal and state laws and regulations and industry standards.

126.   The protection of Private Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and MACT, on the other hand. Had Plaintiff and Class Members known that MACT would not adequately protect Private Information they would not have done business with MACT.

127.   Plaintiff and Class Members performed their obligations under the implied contract when they provided MACT with their Private Information.

128.   MACT breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Private Information.

129.   The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of MACT's material breaches of its agreements.

130.   Plaintiff and Class Members were damaged by MACT's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the Breach, including the increased risks of identity theft they face and will continue to face.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

131.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

132.   Plaintiff and Class Members have an interest, both equitable and legal, in the PII and PHI that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

133.   As a healthcare provider, Defendant has a fiduciary relationship to its patients. By providing healthcare services for Plaintiff and the Class, Defendant has a duty to act in good faith and solely for the benefit of Plaintiff and Class Members in all matters related to their healthcare.

134.   Defendant is in possession of individuals' PII, PHI, and confidential medical information that are not generally known. Plaintiff is very careful with PII and PHI and does not disclose PII/PHI of Plaintiff's own accord.

135.   Plaintiff and Class Members neither consented to nor authorized the disclosure of their PII/PHI to a criminal actor.

136.   Defendant was negligent in the maintenance of its computer systems in which Plaintiff's and Class Members' PII and PHI were stored. Defendant knew, or should have known, that the Private Information stored in their systems could be exploited at great cost to Plaintiff and the Class.

137.   Plaintiff has suffered concrete injuries as a result of Plaintiff's PII and PHI being exposed in the Data Breach.

138.   Plaintiff has dedicated significant time to monitoring financial accounts, implementing credit freezes, registering for identity theft protection, and dealing with increased spam communications. As discussed *supra*, cybercriminals may store individuals' PII and PHI for years before using it for fraudulent activity. After MACT's offer of credit monitoring expires, any credit monitoring services that Plaintiff requires must be purchased out of pocket. Due to the breadth of Private Information compromised in the Data Breach, Plaintiff may need credit monitoring services for the rest of Plaintiff's life.

139.   Beyond the impending risk of identity or medical fraud, Plaintiff and Class Members have suffered emotional distress from the exposure of their private medical information.

140. Further, Plaintiff and Class Members have suffered damage to and diminution of the value of their PII and PHI. Individual pieces of private information have an ascertainable monetary value, as evidenced by the prices cybercriminals charge for them.

141. As a healthcare provider, Defendant breached its fiduciary duty to patients by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to follow its own privacy practices; and (g) making an unauthorized and unjustified disclosure and release of Plaintiff and the Class Members' PHI and medical records/information to a criminal third party.

142. Defendant's breach of its fiduciary duty to its patients was a real factor in bringing about Plaintiff's and Class Members' injuries. But for Defendant's failure to properly secure its computer systems, Plaintiff would not be required to spend time, money, and effort to protect themselves from imminent fraud.

143. In addition to Defendant's duty to keep Plaintiff's and Class Member's Private Information confidential, Defendant failed to safeguard PII and PHI that Plaintiff and the Class had no choice but to provide to receive healthcare services. Plaintiff and the Class were reliant on Defendant for necessary services. The imbalance of power between Plaintiff and Defendant further indicates that Defendant owed, and subsequently breached, a fiduciary duty to its patients. This is especially true where, as here, Defendant MACT was one of, if not the only, healthcare option available for Plaintiffs and Class Members residing in its rural service area.

144. As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial

## COUNT V
## BREACH OF CONFIDENCE

145.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

146.    At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII/PHI it held.

147.    Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII/PHI would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

148.    Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understanding that Defendant would protect and not permit the PII/PHI to be disseminated to any unauthorized third parties.

149.    Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understanding that Defendant would take reasonable and industry standard precautions to protect their PII/PHI from unauthorized disclosure.

150.    Defendant voluntarily received in confidence Plaintiff's and Class Members' PII/PHI with the understanding that PII/PHI would not be disclosed or disseminated to unauthorized third parties or to the public.

151.    Due to Defendant's failure to prevent or avoid the Data Breach, Plaintiff's and Class Members' PII/PHI was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

152.    As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

153.    But for Defendant's disclosure of Plaintiff's and Class Members' PII/PHI in violation of the parties' understanding of confidence, their PII/PHI would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

154.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's inadequate security of Plaintiff's and Class Members' PII/PHI.

Defendant knew or should have known that its methods of accepting, storing, transmitting, and using Plaintiff's and Class Members' PII/PHI were inadequate.

155.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) threat of identity theft; (ii) the loss of the opportunity in how their PII/PHI is used; (iii) the compromise, publication, and/or theft of their PII/PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII/PHI; (v) the continued risk to their PII/PHI, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII/PHI compromised as a result of the Data Breach for the rest of Plaintiff's and the Class Members' lives.

156.   As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT VI
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
## BUSINESS & PROFESSIONS CODE §§ 17200, *et seq.*

157.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

158.   This claim is pleaded on behalf of Plaintiff and Class Members in the State of California.

159.   The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

160.   By reason of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class

31

Members' Private Information, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

161.  Defendant's business practices, as alleged herein, were unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential Private Information of consumers has been compromised for all to see, use, or otherwise exploit.

162.  Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' Private Information also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§17200 *et seq.*, in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

163.  Defendant engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' Private Information with knowledge that the information would not be adequately protected; by violating the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; by violating the other statutes described above; and by storing Plaintiff's and Class Members' Private Information in an unsecure electronic environment in violation of HIPAA, which require Defendant to take reasonable methods of safeguarding the Private Information of Plaintiff and the Class Members.

164.  Defendant's practices were also unlawful and in violation of Civil Code §§ 1798, *et seq.* and Defendant's own Notice of Privacy Practices because Defendant failed to take reasonable measures to protect Plaintiff's and Class Members' Private Information and failed to take remedial measures such as notifying its patients when it first discovered that their Private Information may have been compromised.

165.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code §1280.15(b)(2).

166.    Defendant's business practices, as alleged herein, were fraudulent because they were likely to deceive consumers into believing that the Private Information they provided to Defendant would remain private and secure when, in fact, it was not private and secure.

167.    Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above-described wrongful actions, inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their Private Information.

168.    But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their Private Information to Defendant or would have insisted that their Private Information be more securely protected.

169.    These above-described misrepresentations and omissions emanated from Defendant's conduct in California, where MACT is organized and maintains its principal place of business, including the design and dissemination of its marketing, Notice of Privacy Practices, and other representations concerning data security. The unlawful, unfair, and fraudulent business practices alleged herein occurred, originated, and were directed from California, and California has a substantial interest in regulating the conduct of corporations organized and headquartered within its borders, deterring fraud, and protecting consumers—including non-residents—from deceptive business practices emanating from California. Thus, application of the UCL to a nationwide class is appropriate where the wrongful conduct originated in California and no other state has an identifiable interest in denying their residents full recovery under the UCL.

170.    As a direct and proximate result of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' Private Information, they have been injured by, *inter alia*: (1) the loss of the opportunity to control how their Private Information is used; (2) the diminution in the value and/or use of their Private Information entrusted to Defendant; (3) the compromise, publication,

and/or theft of their Private Information; (4) the loss of Plaintiff's and Class Members' benefits of their bargains, as they would not have paid for Defendant's services, or would only have been willing to pay substantially less for them, had they known that it would not adequately protect their PII/PHI; and (5) costs associated with monitoring their Private Information, amongst other things.

171.    Plaintiff and Class Members seek an order mandating that Defendant implement adequate security practices to protect patients' and consumers' PII/PHI. Additionally, Plaintiff and Class Members seek and request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's unfair and unlawful practices.

## COUNT VII
## VIOLATION OF CALIFORNIA CONFIDENTIALITY OF
## MEDICAL INFORMATION ACT CAL. CIV. CODE §§ 56, *et seq*. ("CMIA")

171.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

172.    This claim is pleaded on behalf of Plaintiff and Class Members in the State of California.

173.    Defendant is subject to the requirements and mandates of the CMIA.

174.    CMIA § 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

175.    As a direct result of its negligent failure to adequately protect the data it collected from the Plaintiff and Class Members, Defendant allowed for a data breach which released the PII/PHI of the Plaintiff and Class Members to criminals and/or third parties.

176.    The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental or physical condition, or treatment."

177.    The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the [customers]' name, address, electronic mail address,

telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

178.    Defendant is in possession of affected individuals' medical histories and insurance information, including, but not necessarily limited to, doctors, diagnoses, insurance information, medicines, test results, images, care and treatment. Further, the compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of the Plaintiff by the third parties to whom the data was disclosed.

179.    Defendant lawfully came into possession of Plaintiff's and Class Members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of the Plaintiff's and Class Members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction, or disposal of confidential medical information.

180.    Defendant further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained Plaintiff's and Class Members' medical information.

181.    As a direct and proximate result of Defendant's violations of the CMIA, Plaintiff and Class Members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of one-thousand dollars ($1,000) for each of Defendant's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

**COUNT VIII**
**VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT**
**CAL. CIV. CODE §§ 1798.80, *et seq.* ("CCRA")**

182.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

183.    This claim is pleaded on behalf of Plaintiff and Class Members in the State of California.

184.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain

reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

185. By failing to implement reasonable measures to protect Plaintiff's and Class Members' Private Information, Defendant violated Civil Code § 1798.81.5.

186. In addition, by failing to promptly notify all affected Class Members that their Personal Information had been exposed, Defendant violated Civil Code § 1798.82.

187. As a direct or proximate result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and California-based Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages and harms described herein.

188. In addition, by violating Civil Code §§ 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code Section 1798.84(e).

189. Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82 also constitute unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

190. Plaintiff accordingly requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendant utilize strong industry standard data security measures for the collection, storage, and retention of patient data; (2) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (3) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (4) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (5) ordering that Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems are compromised, hackers cannot gain access to other portions of those systems; (6) ordering that Defendant purge, delete, and destroy in a reasonably secure manner class member data not necessary for its provisions of services; (7) ordering that

Defendant, consistent with industry standard practices, conduct regular database scanning and security checks; (8) ordering that Defendant, consistent with industry standard practices, evaluate all software, systems, or programs utilized for collection and storage of sensitive PII/PHI for vulnerabilities to prevent threats to patients; (9) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (10) ordering Defendant to meaningfully educate its patients about the threats they face as a result of the loss of their PII/PHI.

191.   Plaintiff further requests that the Court require MACT to identify and notify all Class Members who have not yet been informed of the Data Breach, and to notify affected persons of any future data breaches by email within 24 hours of discovery of a breach or possible breach and by mail within 72 hours.

## COUNT IX
## INVASION OF PRIVACY

192.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

193.   Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their PII/PHI that Defendant failed to adequately protect against compromise from unauthorized third parties.

194.   Defendant owed a duty to Plaintiff and Class Members to keep their PII/PHI confidential.

195.   Defendant failed to protect, and released to unknown and unauthorized third parties, the PII/PHI of Plaintiff and Class Members.

196.   By failing to keep Plaintiff's and Class Members' PII/PHI safe, knowingly utilizing unsecure systems and practices, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their PII/PHI from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiff's and Class Members' PII/PHI without consent.

197.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

198.    Defendant knew, or acted with reckless disregard of the fact that, organizations handling PHI are highly vulnerable to cyberattacks and that employing inadequate security software would render them especially vulnerable to data breaches.

199.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII/PHI was unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

200.    Plaintiff seeks injunctive relief on behalf of Class Members, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

### COUNT X
### UNJUST ENRICHMENT

201.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.This claim is pleaded in the alternative to the contract-based counts.

202.    Plaintiff and Class Members conferred a monetary benefit on Defendant—namely, they provided and entrusted Defendant with their valuable PII/PHI. Upon information and belief, Defendant funds its data security measures entirely from payments made by or on behalf of Plaintiff and the Class Members. Accordingly, a portion of such payments made on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

203.    In exchange for this payment, Plaintiff and Class Members were entitled to reasonable measures to protect their PII/PHI.

204.    Defendant appreciated, accepted, and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and Class Members as described herein – namely, (a) Plaintiff and Class Members conferred a benefit on

Defendant, and Defendant accepted or retained that benefit; and (b) Defendant used Plaintiff's and Class Members' PII/PHI for business purposes.

205.   Defendant failed to secure Plaintiff's and Class Members' PII/PHI and, therefore, did not provide full compensation for the benefit provided on behalf of Plaintiff and Class Members provided.

206.   Defendant acquired the PII/PHI through inequitable means in that it failed to disclose its inadequate security practices previously alleged.

207.   Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

208.   Under the circumstances, it would be unjust and unfair for Defendant to be permitted to retain any of the benefits conferred on behalf of Plaintiff and Class Members.

209.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the PII/PHI belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that industry standards mandate.

210.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received on behalf of and for the benefit of Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

A.    For the Court to certify this case as a class action pursuant to Fed. R. Civ. P. 23, that and appoint Plaintiff as a Class Representative, that the undersigned as Class Counsel;

B.    For the Court to enter an order declaring that Defendant's actions, as set forth in this complaint, violate the laws set forth above;

C.    For an order:

(1)    prohibiting Defendant from engaging in the wrongful acts stated herein;

(2)    requiring Defendant to implement adequate security protocols and practices to protect patients' PII/PHI consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

(3)    mandating that proper notice be sent to all affected parties, and posted publicly;

(4)    requiring Defendant to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII/PHI;

(5)    requiring Defendant to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

(6)    requiring Defendant to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

(7)    requiring Defendant to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

(8)    requiring Defendant to conduct systematic scanning for data breach related issues;

(9)    requiring Defendant to train and test its employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the PII/PHI data; and

(10)    requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

D.    For the Court to award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E.    For the Court to issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendant to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring Defendant to cooperate and financially support civil and/or criminal asset recovery efforts;

F.    For the Court to award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under state law);

G.    For the Court to award Plaintiff and the Class their reasonable attorneys' fees and costs of suit;

H.    For the Court to award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I.    For the Court to award any and all other such relief as the Court may deem just and proper under the circumstances.

DATED: February 6, 2026                    Respectfully submitted,

*/s/ M. Anderson Berry*

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Alyssa Brown (SBN 301313)
*abrown@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

41

*Attorneys for Plaintiff and the Proposed Class*